## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SHAWN CHRISTOPHER PRICE,** | : | Civil No. 1:14-CV-2109 |
| | : | |
| **Plaintiff** | : | |
| | : | **(Chief Judge Conner)** |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| | : | |
| **DET.  BUSCHMAN, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

FILED
SCRANTON

JAN 0 9 2015

PER _____

DEPUTY CLERK

### REPORT AND RECOMMENDATION

#### I.    Statement of Facts and of the Case

The plaintiff, a state prisoner who is proceeding *pro se*, filed this particular complaint on November 4, 2014. At the direction of the court, (Doc. 9), Price then submitted an amended complaint on December 29, 2014. (Doc. 10.)

In his amended complaint, Price made allegations relating to an incident which allegedly occurred on October 24, 2012, more than two years prior to the filing of this action. According to Price, on October 24, 2012, he was arrested by Detective Buschman, who allegedly used excessive force in the course of this arrest, resulting in three facial lacerations to the plaintiff. (Id.)[1] Defendants Sanders and Barley, who

---

[1]While Price does not further describe this episode court records appear to indicate that Price was convicted on a guilty plea of fleeing, and recklessly

1

are also police officers, are then alleged to have assisted in the arrest but are not alleged to have used excessive force against Price. Instead, Price simply asserts that these police officers, as witnesses to the incident, were "lying" about this episode. (Id.) Price later requested an administrative inquiry into this use of force, and alleges that Chief Gross, who is also a defendant in this action, ordered such an inquiry but that inquiry cleared the police officers of any wrongdoing. (Id.) On the basis of these allegations, Price seeks injunctive relief suspending all of the police officer defendants as well as $850,000 in compensatory and punitive damages. (Id.)

Along with this complaint, the plaintiff has filed a motion for leave to proceed *in forma pauperis*. (Doc. 2.) For the reasons set forth below, we will grant this motion for leave to proceed *in forma pauperis* (Doc. 2) but recommend that the Court dismiss the amended complaint for failure to timely state a claim upon which relief can be granted.

II.   **Discussion**

A.   **Screening of *Pro Se In Forma Pauperis* Complaints–Standard of Review**

This Court has a statutory obligation to conduct a preliminary review of *pro se* complaints brought by persons who seek leave to proceed *in forma pauperis*.

---

endangering in connection with this incident. Commonwealth v. Price, CP-67-CR-0008125-2012.

Specifically, we are obliged to review the complaint pursuant to 28 U.S.C. § 1915(e) which provides, in pertinent part:"[T]he court shall dismiss the case at any time if the court determines that– (A) the allegation of poverty is untrue; or  (B) the action or appeal--(i) is frivolous or malicious;  (ii) fails to state a claim on which relief may be granted; or  (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915 (e). This statutory text mirrors the language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the Court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court

4

should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by well-pleaded factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

As the court of appeals has also observed: "The Supreme Court in Twombly set forth the 'plausibility' standard for overcoming a motion to dismiss and refined this approach in Iqbal. The plausibility standard requires the complaint to allege 'enough facts to state a claim to relief that is plausible on its face.' Twombly, 550 U.S. at 570, 127 S.Ct. 1955. A complaint satisfies the plausibility standard when the factual pleadings 'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' Iqbal, 129 S.Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S.Ct. 1955). This standard requires showing 'more than a sheer possibility that a defendant has acted unlawfully.' Id. A complaint which pleads facts 'merely consistent with' a defendant's liability, [ ] 'stops short of the line between possibility and plausibility of "entitlement of relief." ' " Burtch v. Milberg Factors, Inc., 662 F.3d 212, 220-21 (3d Cir. 2011) cert. denied, 132 S. Ct. 1861, 182 L. Ed. 2d 644 (U.S. 2012).

In  practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Iqbal, 129 S.Ct. at 1947. Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950. Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they

plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629

F.3d 121, 130 (3d Cir. 2010).

**B.    Price's Amended Complaint Fails to Meet the Pleading Standards Prescribed by Law Because The Claims Set Forth in the Complaint Are Barred by the Statute of Limitations**

Judged against these benchmarks, Price's current *pro se* amended complaint

fails to state a claim within the period of the statute of limitations upon which relief

can be granted with respect to any excessive force claim. In this regard, when

conducting a screening review of a *pro se* complaint under 28 U.S.C. § 1915, a court

may consider whether the complaint is barred under the applicable statute of

limitations. As the United States Court of Appeals for the Third Circuit recently

explained when it affirmed the screening dismissal of a *pro se* complaint on statute

of limitations grounds:

> Civil rights claims are subject to the statute of limitations for personal injury actions of the pertinent state. Thus, Pennsylvania's two year statutory period applies to [these] claims. See Lake v. Arnold, 232 F.3d 360, 368 (3d Cir.2000). The limitations period begins when the plaintiff knows or had reason to know of the injury forming the basis for the federal civil rights action. Gera v. Commonwealth of Pennsylvania, 256 Fed.Appx. 563, 564-65 (3d Cir.2007). Although we have not addressed the issue in a precedential decision, other courts have held that although the statute of limitations is an affirmative defense, district court may *sua sponte* dismiss a complaint under § 1915(e) where the defense is obvious from the complaint and no development of the factual record is required. See Fogle v. Pierson, 435 F.3d 1252, 1258 (10th Cir.2006); see also Eriline Co. S.A. v. Johnson, 440 F.3d 648, 656-57 (4th Cir.2006) (citation omitted)(finding that a district court's screening authority under § 1915(e) "differentiates in forma pauperis suits from ordinary civil suits

and justifies an exception to the general rule that a statute of limitations
defense should not be raised and considered sua sponte.").

Smith v. Delaware County Court 260 F. App'x. 454, 455 (3d Cir. 2008).

Applying these standards, we find that the allegations of use of excessive force
in this *pro se* amended complaint are subject to dismissal on statute of limitations
grounds. Specifically, the principal allegation in this complaint relates to an alleged
use of excessive force that occurred on October 24, 2012. However, the complaint
was first filed on November 4, 2014,  more than two years after this use of force
incident is alleged to have taken place. Therefore, on its face, the complaint is simply
time-barred by the two year statute of limitations generally applicable to civil rights
matters.

It is well-settled that claims brought pursuant to 42 U.S.C. § 1983 are subject
to the state statute of limitations for personal injury actions. Wilson v. Garcia, 471
U.S. 261, 266-67 (1985). In Pennsylvania, the statute of limitations for a personal
injury action is two years. 42 Pa.C.S.A. § 5524. A cause of action accrues for statute
of limitations purposes when the plaintiff knows or has reason to know of the injury
that constitutes the basis of the cause of action. Sameric Corp. of Delaware, Inc. v.
City of Philadelphia, 142 F.3d 582, 599 (3d Cir. 1998); see also, Nelson v. County
of Allegheny, 60 F.3d 1010 (3d Cir. 1995).

While this two-year limitations period may be extended based upon a
continuing wrong theory, a plaintiff must make an exacting showing to avail himself
of this grounds for tolling the statute of limitations. For example, it is well settled that
the "continuing conduct of [a] defendant will not stop the ticking of the limitations
clock [once] plaintiff obtained requisite information [to state a cause of action]. On

discovering an injury and its cause, a claimant must choose to sue or forego that remedy." Barnes v. American Tobacco Co., 161 F.3d 127, 154 (3d Cir. 1998) (quoting Kichline v. Consolidated Rail Corp., 800 F. 2d 356, 360 (3d Cir. 1986)). See also Lake v. Arnold,  232 F.3d 360, 266-68 (3d Cir. 2000). Instead:

> The continuing violations doctrine is an "equitable exception to the timely filing requirement." West v. Philadelphia Elec. Co., 45 F.3d 744, 754 (3d Cir.1995). Thus, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred." Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am., 927 F.2d 1283, 1295 (3d Cir.1991).In order to benefit from the doctrine, a plaintiff must establish that the defendant's conduct is "more than the occurrence of isolated or sporadic acts." West, 45 F.3d at 755 (quotation omitted). Regarding this inquiry, we have recognized that courts should consider at least three factors: (1) subject matter-whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; (2) frequency-whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence-whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate. See id. at 755 n. 9 (citing Berry v. Board of Supervisors of Louisiana State Univ., 715 F.2d 971, 981 (5th Cir.1983)). The consideration of "degree of permanence" is the most important of the factors. See Berry, 715 F.2d at 981.

Cowell v. Palmer Township. 263 F.3d 286, 292 (3d Cir. 2001)

In this case, to the extent that Price complains about the use of excessive force in the course of his October 24, 2012 arrest, Price plainly and immediately attached a high degree of significance and permanence to the events set forth in this complaint.

Thus, Price recites well-pleaded facts in his complaint which clearly reveal that, to the extent these events entailed violations of the plaintiff's constitutional rights, those violations were known and recognized by Price when they first occurred, more than two years ago. Thus, these alleged events plainly had the degree of significance and permanence which should have triggered the plaintiff's awareness of his duty to assert his rights. Therefore, in this case a straightforward application of the two-year statute of limitations compels dismissal of this action as untimely.

### C.   Plaintiff's Claims Against Chief Gross and Defendants Sanders and Barley Fail for Lack of Personal Involvement

Further, Price's claims against defendants Gross, Barley and Sanders, which appear to be brought largely on some theory of *respondeat superior* liability for Detective Buschman's conduct, are also legally insufficient. In order to establish a § 1983 claim a plaintiff must show that a defendant-state actor participated in a violation of the plaintiff's civil rights, directed others to violate those rights, or otherwise had knowledge of and acquiesced in violations committed by subordinate employees. Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995); see also Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir 1989) ("[D]eliberate indifference to a known risk will ordinarily be demonstrated by evidence that the supervisory official failed to respond appropriately in the face of an awareness of such injuries.").

Constitutional tort liability is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of

personal direction or of actual knowledge and acquiescence in the challenged

practice. Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997); see also

Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) ("A[n individual government]

defendant in a civil rights action must have personal involvement in the alleged

wrongdoing; liability cannot be predicated solely on the operation of *respondeat*

*superior*. Personal involvement can be shown through allegations of personal

direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d

1195, 1207 (3d Cir.1988)).

As the Supreme Court has observed:

> Government officials may not be held liable for the unconstitutional
> conduct of their subordinates under a theory of *respondeat superior*. .
> . . See Monell v. New York City Dept. of Social Servs., 436 U.S. 658,
> 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (finding no vicarious liability
> for a municipal "person" under 42 U.S.C. § 1983); see also Dunlop v.
> Munroe, 7 Cranch 242, 269, 3 L.Ed. 329 (1812) (a federal official's
> liability "will only result from his own neglect in not properly
> superintending the discharge" of his subordinates' duties); Robertson v.
> Sichel, 127 U.S. 507, 515-516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ("A
> public officer or agent is not responsible for the misfeasances or position
> wrongs, or for the nonfeasances, or negligences, or omissions of duty,
> of the subagents or servants or other persons properly employed by or
> under him, in the discharge of his official duties"). Because vicarious
> liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead
> that each Government-official defendant, through the official's own
> individual actions, has violated the Constitution.

Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). Applying these benchmarks, courts

have frequently held that, in the absence of evidence of supervisory knowledge and

approval of subordinates' actions, a plaintiff may not maintain an action against

supervisors based upon the misdeeds of their subordinates. O'Connell v. Sobina, No. 06-238, 2008 WL 144199, * 21 (W.D. Pa. Jan. 11, 2008); Neuburger v. Thompson, 305 F. Supp. 2d 521, 535 (W. D. Pa. 2004). Under any theory of liability under § 1983, however, a plaintiff must allege facts to show the personal involvement of each defendant in the alleged constitutional violation. See Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988).

As to defendants Barley and Sanders, while it is alleged that they were present at the plaintiff's arrest, the amended complaint does not allege that they participated in any use of excessive force.  Instead, Price simply asserts that they are liable because they were "lying" about this use of force when they failed to corroborate the plaintiff's claims.  To the extent that Price premises the liability of these defendants upon their status as witnesses in his state prosecution, it is also well-settled that under § 1983 a "witness has absolute immunity with respect to *any* claim based on the witness' testimony. When a witness is sued because of . . . testimony, the [Supreme] Court [has written], ' "the claims of the individual must yield to the dictates of public policy."' . . . . Without absolute immunity for witnesses, the court concluded, the truth-seeking process at trial would be impaired. Witnesses 'might be reluctant to come forward to testify,' and even if a witness took the stand, the witness 'might be inclined to shade his testimony in favor of the potential plaintiff' for 'fear of subsequent liability.'" Rehberg v. Paulk, —— U.S. ——, ——, 132 S.Ct. 1497, 1505,

182 L.Ed.2d 593 (2012). Since these witnesses are immune from civil liability for their act of testifying, Price's efforts to sue his police officer witnesses must be rejected.

As for Chief Gross, his only alleged involvement in this matter was directing an administrative inquiry into Price's excessive force complaints, an administrative inquiry which Price alleges led to the exoneration of Detective Buschman. These allegations are legally insufficient to establish supervisory liability by this defendant. Indeed, " 'Numerous courts, including this one, have expressed uncertainty as to the viability and scope of supervisory liability after Iqbal.' Santiago, 629 F.3d at 130 n. 8 (collecting cases); see also Argueta, 643 F.3d at 70." Bistrian v. Levi, 696 F.3d 352, 366 n. 5 (3d Cir. 2012). To the extent that supervisory liability survives after Iqbal, the scope of that liability is clearly and narrowly defined. As the United States Court of Appeals for the Third Circuit has observed: "'[t]here are two theories of supervisory liability' one under which supervisors can be liable if they 'established and maintained a policy, practice or custom which directly caused [the] constitutional harm,' and another under which they can be liable if they 'participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations.' A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir.2004) (second

alteration in original)." Santiago v. Warminster Twp., 629 F.3d 121, 129 (3d Cir. 2010).

Price cannot rely upon either of these theories of supervisory liability to support his current complaint. First, Price has not alleged well-pleaded facts showing that "the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations.' A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir.2004) (second alteration in original)." Santiago v. Warminster Twp., 629 F.3d 121, 129 (3d Cir. 2010). Moreover, there is no claim of supervisory liability here grounded upon an assertion that the defendants "established and maintained a policy, practice or custom which directly caused [a] constitutional harm," Santiago v. Warminster Twp., 629 F.3d 121, 129 (3d Cir. 2010), since Price has not identified any policy which led to the various injuries which he alleges that he has suffered. Finally, the fact that an administrative investigation conducted by the police did not support Price's claims does not, by itself, give rise to any form of supervisory liability against Chief Gross. See e.g., Paluch v. Sec'y Pennsylvania Dept. Corr., 442 F. App'x 690, 695 (3d Cir. 2011); Pressley v. Beard, 266 F. App'x 216, 218 (3d Cir. 2008).

In sum, Price's claims as set forth in his amended complaint are untimely, and legally insufficient to state a claim upon which relief may be granted. Therefore, this amended complaint should be dismissed. Having conducted this screening analysis

and determined that Price's amended complaint is still wanting, we recognize that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, See Fletcher-Hardee Corp. v. Pote  Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless granting further leave to amend would be futile or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). With respect to the defendants and claims in this amended complaint, in this case the Court has previously provided the plaintiff with ample opportunity to amend his pleading, but to no avail. The amended complaint still fails to state a viable civil rights cause of action against these defendants, and actually repeats assertions that were previously found to be legally insufficient.  Since the plaintiff has been afforded an opportunity to correct the deficiencies identified in his prior complaint with respect to these defendants, has failed to state a viable civil rights cause of action, and the factual and legal grounds proffered in support of the amended complaint make it clear that he has no right to relief, granting further leave to amend would be futile or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). Therefore it is recommended that the amended complaint be dismissed without further leave to amend.

## III.   **Recommendation**

Accordingly, for the foregoing reasons, the plaintiff's motion for leave to proceed *in forma pauperis* be GRANTED (Doc. 2), but IT IS RECOMMENDED that the plaintiff's amended complaint be dismissed with prejudice.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified  proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 9th day of January, 2015.

                                        *S/Martin C.  Carlson*
                                        Martin C. Carlson
                                        United States Magistrate Judge